# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DAVID KRAYBILL (R51497),

    Petitioner,

    v.

FELICIA ADKINS, Warden,

    Respondent.

Case No. 1:23-cv-03314

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

Petitioner David Kraybill, in custody at Danville Correctional Center, filed a pro se petition for habeas corpus under 28 U.S.C. § 2254. [1], [13]. The Warden moved to dismiss the petition as untimely. [29]. For the following reasons, the motion to dismiss, [29], is granted, the petition, [1]; [13], is dismissed, and the court declines to issue a certificate of appealability. Kraybill's pending motions, [43]; [49]; [50], are denied as moot. The Clerk of Court is directed to enter final judgment and close the case.

## BACKGROUND

More than fifteen years ago, an Illinois jury convicted Kraybill of first-degree murder by personally discharging a firearm. [29-7] at 11.[1] The trial court imposed a 40-year sentence for the murder and added 25 years for the firearm enhancement. *Id.* The Illinois Appellate Court reversed this conviction, however, because the trial court had improperly admitted testimony about Kraybill's pretrial silence. *Id.* at 1. At his second trial, another jury convicted Kraybill of first-degree murder and of proximately causing the death of another by discharging a firearm, and the trial court sentenced him to 65 years. [29-5] at 5. The Illinois Appellate Court affirmed, *id.* at 1, and the Illinois Supreme Court denied Kraybill's petition for leave to appeal (PLA), [29-2]. Kraybill did not petition the United States Supreme Court for a writ of certiorari. [13] at 3.

On June 23, 2015, Kraybill filed a verified petition for post-conviction relief under 725 ILCS 5/122-1 *et seq.* [29-3] at 1. The trial court denied that petition, and

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

the Appellate Court affirmed. [29-5]. On May 25, 2022, the Illinois Supreme Court again denied Kraybill's PLA. [29-6].

On May 25, 2023, Kraybill filed his federal habeas petition. [1]. In it, he raised six claims: (1) ineffective assistance of counsel for failure to challenge the validity of search warrants, (2) ineffective assistance of counsel[2] for failure to object to or impeach the testimony of Jennifer Heggesta, Kraybill's then-girlfriend who testified against him at both trials, (3) prosecutorial misconduct for presenting Heggesta's testimony, (4) ineffective assistance of counsel for failing to challenge the State's fingerprint expert, (5) "[j]udicial bias, [p]rosecutorial misconduct, and ineffective assi[s]tance of counsel" for a variety of rulings made by the trial judge, (6) "[c]onflicting [a]ppellate [c]ourt [r]ulings," and (7) Kraybill's inability to access Sergeant James Christensen's notes from when Christensen interviewed Kraybill. *Id.* Twelve days later, on June 6, 2023, Kraybill filed a supplement to his original petition, expanding on his fifth claim and adding an eighth, for ineffective assistance of appellate counsel. [7].

This court ordered Kraybill to show cause why his case should not be dismissed as untimely under 28 U.S.C. § 2244(d). [14]. Kraybill responded, arguing that his petition should not be dismissed because of the doctrine of equitable tolling and because he was actually innocent of his crime of conviction. [17]. After Kraybill's response, the court found that the petition did not "plainly appear[]" to be untimely or otherwise without merit. [18]; *see* Rule 4, Rules Governing Section 2254 Cases in the United States District Courts.

The Warden moved to dismiss the petition as untimely. [29]. Kraybill filed a response, [47], which was accompanied by an affidavit [48].

## DISCUSSION

### I. Timeliness

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) provides, "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—" certain dates set forth in the statute, including as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[3] The statute also provides that "[t]he time during which a

---

[2] This claim is styled as a claim of "[i]neffective assistance of counsel, and [p]rosecutorial misconduct." [1] at 8. Given, however, that Kraybill asserts the same basis for his third claim, denominated simply as "[p]rosecutorial misconduct," *id.* at 10, the court construes this claim as a claim of ineffective assistance of counsel.

[3] There is no indication that the other dates set forth in the statute, § 2244(d)(1)(B), (C), or (D), apply here.

properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection." *Id.* § 2244(d)(2); *see also Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002). State law governs whether an application is pending for federal habeas purposes. *Wilson*, 302 F.3d at 747.

The Illinois Supreme Court denied Kraybill's first petition for leave to appeal on September 24, 2014. [29-2]. Because he did not file a petition for a writ of certiorari with the United States Supreme Court, his conviction became final ninety days later, on December 23, 2014, when the time for filing a writ of certiorari expired. *See Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002). That is when the limitations period began running. *See* 28 U.S.C. § 2244(d)(1)(A). It continued running until June 23, 2015, when Kraybill filed his petition for post-conviction relief in state court. [29-3] at 24. After the trial and appellate courts denied the petition, the Illinois Supreme Court denied Kraybill's petition for leave to appeal on May 25, 2022. [29-6]. At that time, the clock resumed running. *See Lawrence v. Florida*, 549 U.S. 327, 329 (2007) (no statutory tolling to file petition for certiorari in the United States Supreme Court from denial of state post-conviction relief). At this point, Kraybill had 183 days—until November 24, 2022—to file his federal habeas petition. He did not file it, however, until exactly one year later, on May 25, 2023. [1]. Thus, as the court previously found (and as Kraybill acknowledges), the petition is untimely on its face.[4] [14] at 2; [47] at 2.

## II. Equitable Tolling

Kraybill offers two arguments against dismissing his petition as untimely. First, he argues that equitable tolling applies. [47] at 2. "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Kraybill points to three circumstances that he says justify equitably tolling the statute of limitations. First, he argues that COVID-19 lockdowns denied him access to the law library. [17] at 1. Second, he argues that one of his legal storage boxes was lost during his transfer from Lawrence Correctional Center to Danville Correctional Center. *Id.* at 2. Finally, he argues that his post-conviction counsel did not notify him that the Illinois Supreme Court had denied his petition for leave to

---

[4] Because the original petition was untimely, it follows *a fortiori* that the supplement was also untimely.

appeal. *Id.* For the reasons explained below, even taking these assertions as true, none is sufficient to warrant equitable tolling.

### A.    COVID-19 Restrictions

In his response to the show-cause order, Kraybill asserts that the COVID-19 pandemic "virtually shut down the entire country, including access to his legal papers, legal books, research, etc., that were located in the law library." *Id.* at 1. He has been unable to determine the exact dates of the lockdown. *Id.* He asks the court to permit discovery to allow him to ascertain the precise timeline. [48] at 3. However, he notes that "lockdowns at all Illinois correctional facilities lasted over two years, and on/off for well over two years." [17] at 2.

Some courts have held that the pandemic "may very well qualify as an 'extraordinary' circumstance that warrants equitable tolling for the purposes of" federal habeas in an appropriate case. *United States v. Smith*, No. ELH-18-17, 2020 WL 4016242, at *2 (D. Md. July 16, 2020); *see also Jackson v. United States*, No. 21-cv-361, 2022 WL 17752135, at *5 (S.D. Ill. Dec. 19, 2022). Others, however, have held that "lockdowns and similar situations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling." *Powell v. United States*, No. 21-12432-J, 2022 WL 2811987, at *1 (11th Cir. Feb. 8, 2022); *see also Wilson v. Williams*, No. 22-cv-1285, 2023 WL 6929576, at *7 (N.D. Ill. Oct. 19, 2023); *Mack v. Alves*, 588 F. Supp. 3d 150, 152 (D. Mass. 2022); *Taylor v. Valentine*, No. 5:20-cv-00139-TBR, 2021 WL 864145, at *3 (W.D. Ky. March 8, 2021).

Even assuming without deciding that COVID-19 lockdowns could support equitable tolling, they provide no help to Kraybill. First, he cannot show that they "caused" his delay. *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 257 (2016). The lockdowns occurred before his state post-conviction proceedings had concluded. According to Kraybill, they "lasted over two years, and on/off for well over two years." [17] at 2. However, his state post-conviction proceedings did not conclude until May 25, 2022—more than two years after the pandemic began. Because he had not yet "exhausted the remedies available in the courts of" Illinois, 28 U.S.C. § 2254(b)(1)(A), he would not have been able to file his petition during this time even in the absence of the pandemic. Moreover, by Kraybill's own assertion, he thought his state post-conviction proceedings remained pending (and thus that he could not file his federal habeas petition) for seven *additional* months after the Illinois Supreme Court denied his petition for leave to appeal. [1] at 17; [13] at 17; [17] at 2. Thus, it cannot be said that the pandemic caused his delay.

Second, even if equitable tolling were appropriate, it would be redundant of the statutory tolling Kraybill already received. As noted above, the limitations period was statutorily tolled from June 2015 until May 2022 while Kraybill's state post-conviction proceedings were pending. *See* 28 U.S.C. § 2244(d)(2). Thus, equitably

tolling the limitations period for "over two years" beginning in March 2020 would not add any additional time. Even if intermittent restrictions on law library access occurred after this time, they would be insufficient to support equitable tolling. *See Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008) ("[A] prisoner's limited access to the prison law library is not grounds for equitable tolling.").

### B. Loss of Legal Storage Box

In his affidavit, Kraybill avers that one of his legal storage boxes was lost in transit during his transfer from Lawrence Correctional Center to Danville Correctional Center, and remained lost from November 18, 2022, to March 3, 2023. [48] at 3. This box contained "all of the exclusively related case material, pertinent case filings, briefs, court filings, transcripts, correspondence, emails, etc." *Id.* This material, Kraybill argues, was necessary for "formulating and transcribing even a basic Federal Habeas claim." *Id.*

This argument, however, is foreclosed by the Seventh Circuit's decision in *Lloyd v. Van Natta*, 296 F.3d 630 (7th Cir. 2002). In *Lloyd*, the court held that the petitioner's inability to obtain trial transcripts did not support equitable tolling. *Id.* at 634. It reasoned that, because the petitioner "was present at his trial and knew the basis on which he could have asserted" his claims, his failure to obtain transcripts could not support equitable tolling. *Id.* at 633. This reasoning applies with equal force to the other materials listed by Kraybill. At most, his "alleged inability to access . . . his legal records or conduct legal research . . . could have affected the extent of the content included in his Petition," but "it did not prevent him from filing a petition." *Vanderark v. Greene*, No. 20-1417, 2021 WL 2228059, at *3 (C.D. Ill. 2021).

Additionally, Kraybill contends that he "was not even able to discover the loss of [his] legal box until December 16, 2022"—more than three weeks after the time had expired. It is not clear how the absence of a box Kraybill did not notice was missing could have prevented him from filing. Moreover, Kraybill asserts that the box was lost for less than four months. Thus, even if the court were to accept Kraybill's argument that equitable tolling is warranted for this period, it can account for only slightly more than half of the six months by which Kraybill's petition was untimely.

### C. Counsel's Failure to Notify

The last ground Kraybill asserts for equitable tolling is that his counsel did not inform him that the Illinois Supreme Court had denied his petition for leave to appeal. As noted earlier, the Illinois Supreme Court denied his petition on May 25, 2022. Kraybill attaches an email that his stepfather received from Kraybill's counsel on November 30, 2022, in which counsel stated that there were "[n]o updates" at that

time. [17] at 19. As a result, Kraybill asserts that he did not learn of the Illinois Supreme Court's decision until December 30, 2022. *Id.* at 2.

In general, "a prisoner 'bears the risk in federal habeas for all attorney errors made in the course of representation.'" *Shinn v. Ramirez*, 596 U.S. 366, 382-83 (2022) (quoting *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)). Accordingly, "a garden variety claim of excusable neglect" by counsel is not enough to warrant equitable tolling. *Holland*, 560 U.S. at 651-52 (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). However, "more serious instances of attorney misconduct" are sometimes sufficient. *Id.* at 652. Courts are divided on the application of these principles to cases in which a prisoner's counsel did not notify him of a court's adverse ruling. *Compare Vazquez v. Greiner*, 68 F. Supp. 2d 307, 310 (S.D.N.Y. 1999) (granting equitable tolling) *and Baskin v. United States*, 998 F. Supp. 188, 190 (D. Conn. 1998) ("It would be grossly inequitable to bar petitioner's ineffective assistance of counsel claim on the basis that counsel's error permitted the statute of limitations to run."), *with LaCava v. Kyler*, 398 F.3d 271, 276 (3d Cir. 2005) (rejecting argument that equitable tolling should apply because "counsel was derelict in failing to timely notify him of the state court's disposition") *and Jackson v. United States*, 319 F. Supp. 2d 672, 677 (E.D. Va. 2004) ("[I]neffective assistance of counsel must exist before attorney error can be used to trigger equitable tolling.").

This court need not weigh in, however, because even if counsel's failure to notify Kraybill that his petition had been denied constitutes an extraordinary circumstance that is not attributable to Kraybill, equitable tolling would still not be warranted because Kraybill failed to diligently pursue his rights. By his own assertion, Kraybill learned of the Illinois Supreme Court's decision on December 30, 2022. But he did not file his petition until May 25, 2023. Thus, Kraybill's reliance on *Holland* is unpersuasive. Upon learning that the state court had issued its decision, the petitioner in *Holland* "immediately wrote out his own *pro se* federal habeas petition and mailed it to the Federal District Court . . . the next day." 560 U.S. at 639. Kraybill, by contrast, waited nearly five months.[5] *Cf. Pace*, 544 U.S. at 419 (denying equitable tolling because, among other things, petitioner waited five months after his state post-conviction proceedings became final to file his federal habeas petition). Although "[t]he diligence required for equitable tolling purposes is reasonable diligence . . . not maximum feasible diligence," *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (quoting *Holland*, 560 U.S. at 653), the court cannot say that Kraybill diligently pursued his rights.

---

[5] Kraybill's delay may have been the result of counsel's advice, upon learning of the Illinois Supreme Court's decision, that "time constraints [were] not of paramount importance" because "the procedural status of the case" meant that Kraybill's "best chance [was] to produce new evidence of his innocence." [17] at 20; *see McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (recognizing an actual innocence exception to the statute of limitations).

## III. Actual Innocence

Next, Kraybill argues that his petition should not be time-barred because he is actually innocent. [47] at 6. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" when his petition would otherwise be dismissed as untimely. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "The actual innocence gateway," however, "is narrow," *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015), and "applies to a severely confined category" of cases. *Perkins*, 569 U.S. at 395. It applies only when "new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *Id.* (internal brackets omitted) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This "standard is a demanding one that 'permits review only in the "extraordinary" case.'" *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014) (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

An assertion of actual innocence must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The "new evidence" need not, however, be "newly discovered." *Gladney*, 799 F.3d at 898. Rather, it is sufficient that it be "reliable" and "not presented at trial." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003).

Neither Kraybill's response to the show cause order nor his response to the motion to dismiss discloses the new evidence on which he bases his claim of actual innocence. His petition includes only one candidate: in Grounds Two and Three of his petition, Kraybill argues that his trial counsel was ineffective for not objecting to (and the prosecutor was "negligent" for presenting) aspects of Jennifer Heggesta's testimony, which he claims "directly contradicted her statements made to police two days after the crime occurred" as well as "her previous testimony under oath at the first trial six years earlier." [13] at 8. He argues that his counsel did not attempt to impeach Heggesta using her testimony from his first trial. *Id.* at 9. From this, the court can infer the existence both of Heggesta's former testimony and of her previous statements to police, which could, in principle, support a gateway claim of actual innocence.

However, Heggesta's previous statements would have at most served to impeach her testimony at the second trial. Kraybill does not argue that they would have demonstrated his innocence. While impeachment evidence is for some purposes equivalent to exculpatory evidence, *see Giglio v. United States*, 405 U.S. 150, 153 (1972), Heggesta's alleged inconsistent statements are hardly the sort of "documentary, biological (DNA), or other powerful evidence," *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005), that is required to support a plea of actual innocence. Even if the jury disregarded her testimony entirely, it would have been left with, among other things, (1) Kraybill's relationship with the victim, (2) his ownership of the type of weapon and ammunition used to commit the murder, (3) his presence at the victim's home the day of the murder, (4) his fingerprints on the

victim's vehicle, (5) his DNA on leather gloves found at the murder scene, (6) his statements to police that the victim "was manipulative, egocentric and cared for no one other than his own self," and (7) his statements to police that, if he told them "everything [he] want[ed] to tell [them]" he would "spend the rest of [his] life in jail." *See* [29-1] at 4-14 (summarizing the evidence against Kraybill). The court cannot conclude that no reasonable juror, after considering this evidence (even entirely discrediting Heggesta's testimony) would have convicted Kraybill.[6]

## IV.  Certificate of Appealability

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a dismissal is on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* The petition is clearly time-barred. Thus, the court declines to issue a certificate of appealability.

## V.  Notice of Appeal Rights

This is a final decision ending this case in this court. If petitioner wishes to appeal, he must file a notice of appeal in this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if he wishes the court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 609(b). A Rule 59(e) motion must be filed within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App.

---

[6] To the extent Kraybill's actual innocence claim arises from the admissions he requests, [27]; [43], the requested admissions likewise would not demonstrate his innocence. *See Dixon v. Williams*, 93 F.4th 394, 405 (7th Cir. 2024). Even if admitted, they would at most be relevant to an underlying constitutional claim. But, as discussed above, any such claim would be untimely.

8

P. 4(a)(4)(A)(vi).  The time to file a motion pursuant to Rule 59(e) or Rule 60(b) cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).

## CONCLUSION

For the reasons given above, the motion to dismiss, [29], is granted, the petition, [1]; [13], is dismissed, and the court declines to issue a certificate of appealability.  Kraybill's pending motions, [43]; [49]; [50], are denied as moot.  The Clerk of Court is directed to enter final judgment and close the case.

Dated: September 30, 2024                    /s/ Martha M. Pacold

9